LEWIS STATE BANK v. B. H. BRIDGES, City Auditor and Clerk of the City of Tallahassee; W. L. MARSHALL, PERES B. MCDOUGALL and W. T. MOORE, JR., City Commissioners.

156 So. 144.

Opinion Filed July 17, 1934.

James Messer. Jr., and *W. J. Oven*, for Appellant;

Guyte P. McCord and *LeRoy Collins*, for Appellees.

TERRELL, J.—Appellant, The Lewis State Bank, a banking corporation under the laws of Florida, made an alleged return to the City of Tallahassee of its capital stock, surplus, undivided profits, and real estate for the years of 1927 and 1928 but paid no taxes on any of said property except its real estate. At the time of making such return, the bank advised the city that its capital stock, surplus, and undivided profits were invested in bonds of the Government of the United States which were tax exempt. No return was made by the bank to the city in 1929 because the city had made demand on the bank for payment of municipal taxes on all its assets for the three years last mentioned. In assessing said taxes, the city discarded the return made by the bank for the years 1927 and 1928 and back assessed the bank on its capital stock, surplus, and undivided profits for the years 1927, 1928 and 1929, said assessment having been made in the latter year. In making this assessment, the city imposed the like millage as that imposed on other property for the respective three years. There was no controversy between the city and the bank as to the latter's taxes on its real estate.

The instant suit was filed by the bank in July, 1930, praying that the assessments so imposed by the city against its capital stock, surplus, and undivided profits be annulled and cancelled and that the city be enjoined and restrained from making any further levy or assessment against it. A demurrer to the bill of complaint was sustained and this appeal is from that decree.

The bank resists the payment of the tax so imposed on it by the city for the reason that at all times since December 31, 1926, it has had its capital stock, surplus, and undivided profits with other assets invested in tax-exempt bonds of the Federal Government, that the said bonds were acquired from time to time with the assets of the bank for the express purpose of getting the exemption and that to impose a tax on them would be in violation of the Act of Congress exempting said bonds from all forms of taxation. McCullock v. Maryland, 4 Wheat, 316, 431, 432, 436, 4 L. Ed. 579, 607-609; National L. Ins. Co. v. U. S., 277 U. S. 508, 48 Sup. Ct. 591, 72 L. Ed. 968; Missouri, *ex rel.* Missouri Ins. Co. v. Gehner, *et al.*, 281 U. S. 313, 50 Sup. Ct. 326, 74 L. Ed. 870.

The city admits the contention of the bank to the effect that bonds of the United States and the State, including its subdivisions, are beyond the taxing power of the city, but contends that the assessment in question is imposed on the bank stock owned and held by the stockholders of the bank rather than on the capital stock held as an asset of the bank. The city, in other words, distinguishes between bank stock and capital stock for assessment purposes. Capital stock of a bank has reference to a sum subscribed and paid into the banking corporation as its working capital. When paid in, it becomes the property of the corporation. Bank stock has reference to the certificate issued by the banking cor-

poration to the purchaser of the share or shares of bank stock and is nothing more than the evidence of title of the purchaser. Bank stock, in other words, is the property of the purchaser while capital stock is the property of the bank. To support its contention, the city relies on Sections 696 and 705, Revised General Statutes of 1920, Sections 896 and 907, Compiled General Laws of 1927. The former Act has reference to the taxation of personal property generally and the latter to the taxation of bank and other corporate stock.

To support its contention, the appellant has presented and argued five questions, but our view is that the primary question with which we are confronted turns on the interpretation of Section 907, Compiled General Laws, *supra,* the pertinent part of which is as follows:

"The owner or holder of stock in any incorporated company doing business under corporate name shall not be taxed for such stock; provided, that such stock is returned for taxation by such incorporated company and taxes are paid thereon by such company, or the property of said corporation is assessed for taxes where located and taxes are then paid on such property."

We do not interpret this statute to mandatorily require a bank to return for taxation and pay the taxes on its stock owned by the stockholders. It permits a bank in its discretion to do so and if done by it, relieves the owner of the stock from paying said taxes. If the bank elects to return and pay the taxes on its stock in the hands of its stockholders, it does so as the agent of the stockholder and may retain the amount of taxes so paid from any dividend in favor of the stockholder. The owner of bank stock is relieved from paying taxes thereon if the banking corporation

makes return on and pays taxes on its property where located.

The return brought in question appears to be a copy of the annual statement of the bank's condition for December, 1926 and 1927, with the names of the stockholders attached, including the letter of transmittal. It does not include and makes no mention of the bank stock. It was not sworn to and failed in other material respects to comply with the law for making returns of bank stock.

The assessment complained of was against the "capital stock" and was made on the bank direct. As thus made, the bank being the owner, was in position to take advantage of the exemption claimed by it under the Federal statute. There was no theory under which an assessment of the bank's stock should have been made directly against the bank after its (bank's) failure to return it for taxation. If a proper return of the bank stock had been made, the assessment could have been made against the bank as agent of the stockholder, but since no return of the bank stock was made, and the bank did not pay, then, in that event, the assessment could have been made against the stockholder direct for his shares of stock in the bank if assessable.

A valid assessment is the first prerequisite to a valid tax and its enforcement. The statute above quoted, contemplates that bank stock may be assessed *if the property of the bank is not assessed and the taxes paid,* but it also contemplates that the technical distinctions between them be borne in mind when they are assessed and if not done and a correct assessment made, it cannot stand.

Since we hold the assessment here bad, it becomes unnecessary to discuss other questions raised.

For the reasons thus given, the judgment below is reversed.

Reversed.

Davis, C. J., and Whitfield, Brown and Buford, J. J., concur.