SHARP, Judge.
The appellants are taxpayers who reside in Marion County. They filed a class action suit[1] pursuant to section 194.171, Florida Statutes (1981), challenging the validity of a discretionary two (2) mill tax levy imposed by the School Board of Marion County as authorized by subsection 236.25(2), Florida Statutes (1981).[2] They sought to have the levy declared invalid, and asked the circuit court to enjoin the levy, assessment, and collection of the tax because the School Board failed to comply with various notice and levying provisions in the applicable statutes.[3]
After a non-jury trial, the lower court denied appellants any relief because it found that the omitted statutory requirements were directory and not mandatory, and that the School Board substantially complied with them. It further found that the form of the levy, showing the purpose for the 2 mill levy in the School Board’s budget as part of an “unreserved fund balance” in the Capital Improvement Fund, was pursuant to law. For the reasons stated herein, we reverse.
The first five defects listed below concern the way in which the School Board notified the public it was going to consider the tax increase, and the timing and manner of its public meetings held thereafter:
1. Subsection 236.25(2)(c), Florida Statutes (1981), requires that in addition to the notice required by subsection 200.065(3), Florida Statutes (1981), the School Board “shall publish a second notice of intent to levy additional taxes under this section.”
Subsection 200.065(3) says the advertisement
shall be no less than one-quarter page in size of a standard-size or tabloid size newspaper, and the headline in the advertisement shall be in a type no smaller than 18 point. The advertisement shall not be placed in that portion of the newspaper where legal notice and classified advertisements appear.
Subsection (3)(b) dictates the use of a particular specified format if the school district is proposing “a millage rate in excess of 100 percent of the rolled-back rate computed pursuant to subsection (1).... ”
Section 237.081, Florida Statutes (1981), requires that school boards advertise a summary of their tentative budgets, including the proposed millage levies, one time in a newspaper of general circulation. “The advertisement shall appear adjacent to the advertisement required pursuant to s. 200.-065. The board shall hold public hearings to adopt tentative and final budgets pursuant to s. 200.065.”
The School Board failed to publish two notices, and it published its one notice in the wrong place and in the wrong sized print. On or about August 11, 1980, the School Board published a notice of tax in *18 crease to be considered at a meeting on August 14. The notice ran next to a summary of the Board’s tentative budget in the Ocala Star Banner. This was printed, however, in the legal notice section on page 9A. The notice was in the format required by subsection 200.065(3)(b), but was in very small print, and it was dramatically smaller than the one-quarter page ad size required by section 200.065(3).
Witnesses for the School Board testified they misread subsection 200.065(3) and thought the large sized ad was not necessary.[4] No one from the general public attended the August 14 School Board meeting. At that meeting the Board voted to make the 2 mill levy a part of its tentative budget.
2. The School Board advertised on January 20, 1981, that it would hold a meeting on January 27 to consider “a series of items which will be published in an agenda seven days prior to the meeting.” This notice was not sufficient to make up for the deficiencies in the first notice, nor did it, itself, comply with the size and format required in subsections 200.065(3) and (3)(b), and if subsection 200.065(2)(a) applied, the meeting should have been held within three days of the notice.
At this meeting the School Board voted to certify the tentative millage to the property appraiser, although the discretionary 2 mill levy was not specifically voted on at that meeting, according to the minutes.
3. On March 3, 1981, the School Board held a public meeting to finalize its budget and tax levies. It passed the discretionary 2 mill levy. There was no notice or advertisement published concerning this meeting, contrary to the requirements of subsections 200.065(2)(f) and 236.25(2)(c).
4. Taxpayers also argue the March 3 meeting was invalid because it was held less than 60 days after the property appraiser prepared the certification of value pursuant to subsection 200.065(1) and section 193.023, Florida Statutes (1981). Subsection 200.-065(2)(f)3 says the public hearing to finalize the budget and adopt the millage rate shall be within 75 days of certification but not sooner than 60 days. School Board witnesses testified the certification process that year in Marion County was delayed for reasons beyond their control, and it was necessary for the finalized budget to be adopted earlier than the 60-day time limit.
5. Taxpayers also argue the March 3 meeting was illegal because it was held in a place other than that specified in section 230.17, Florida Statutes (1981). This section requires that all school board meetings be held in the office of the superintendent or a room nearby designated as the School Board meeting room, unless due public notice has been given that the meeting will be held in another public place.[5]
The meeting on March 3 convened at the School Board meeting room, but had to be moved twice to accomodate the large and unexpected turnout of voters. The crowd was in attendance because some taxpayers had purchased a large ad in the Star Banner stating the School Board was going to increase its property tax levy by 26.75%.
6. The final defect in the levy asserted by appellants concerns the content of the notice, and tentative and final budgets regarding the purpose of the 2 mill levy.
The School Board never specified the project or projects it intended to fund with its discretionary 2 mill levy. In the final budget, the $3,612,754.00 to be raised by the levy was shown as going into an “unreserved fund balance” which totaled $7,794,-992.54, and which was generally labeled “Capital Improvement Fund.” Some $759,-000.00 was to be spent in the 1981-82 budget year, but the funds produced by the levy were not planned to be spent. School Board witnesses testified the funds would have to be used for capital improvement purposes; that the Board had adopted a 5-year building plan pursuant to the state *19 approved plant survey;[6] and the survey showed over $40,000,000.00 in capital improvements were needed in that time span. They testified kthat the time was too short to amend the budget to show specific uses for the 2 mill levy funds.
Section 236.25, which authorizes the discretionary 2 mills, provides not only shall the School Board advertise its intent to levy additional taxes twice, but it further says:
Such notice shall specify the projects or number of school buses anticipated to be funded by such additional taxes and shall be published in the size, within the time periods, and in substantially the format required under s. 200.065(3). (Emphasis added.)
§ 236.25(2)(c), Fla.Stat. (1981).
Section 237.081 further provides, concerning public hearings to adopt tentative and final budgets pursuant to section 200.065:
The hearings shall be primarily for the purpose of hearing requests and complaints from the public regarding the budgets and the proposed tax levies and for explaining the budget and proposed adopted amendments thereto, if any.
The School Board argues that the defects shown in its attempts to follow the statutory procedure are not material, and in any event, that it substantially complied with the basic format and requirements of the statutes. We do not agree there was substantial compliance.[7] However, the judiciary is reluctant to stop the wheels of local government by invalidating tax levies and assessments. Courts are willing to overlook missed steps and failures on behalf of the tax authorities, where the defects do not create basic unfairness and are not mandated by the language or purpose of the statute.
An example is St. Joe Paper Company v. Ray, 172 So.2d 646 (Fla. 1st DCA 1965). The defects asserted there were the tax assessor’s failure to file a schedule of tangible personal property, and the absence of a return. The court said “[u]nless specifically declared otherwise, all the provisions of law relating to assessment and collection of revenue are directory only, designed for the orderly arrangement of records and procedures of officers in enforcing the revenue laws.” Id. at 648.
In Florida East Coast Railway Company v. Reid, 281 So.2d 77 (Fla. 4th DCA 1973), the court considered three defects. Two of the defects, which related to procedure and records, were not sufficient to make the assessment void: the tax assessor failed to follow his manual in setting values, and changes in the tax roll were made after it was certified. However, the third defect— failure to give the challenging taxpayer notice of a large increase in his assessment, as required by the statute — made the assessment void. This failure created a basic unfairness to that taxpayer because it deprived him of his opportunity to pursue administrative remedies in attacking the assessment before the Board of Adjustment.
Whether or not a provision is mandatory or directory, whether almost is going to be good enough, depends on the court’s analysis of the history and subject matter of the statute not complied with.[8] If the provision not complied with was intended for the protection of the taxpayer, or to prevent a sacrifice of his property, courts construe such statutes as requiring strict compliance even though the language used is not particularly mandatory. Examples of this judicial point of view are numerous in Florida’s decisional law. In Jernigan v. Harrison, 136 Fla. 320, 186 So. 511 (1939), the court invalidated a tax deed because a copy of the notice of application for the tax deed was not mailed to the owner’s address. The court said that if the provision omitted was intended to protect the citizen, it is jurisdictional.[9]
Further, when the taxing power is being exercised by a tax authority which *20 does not have inherent power to tax, such as cities and school boards, courts read the statutes granting the tax power strictly. In Certain Lots Upon Which Taxes Are Delinquent v. Town of Monticello, 159 Fla. 134, 31 So.2d 905 (1947), the court read the city’s charter strictly to require passage of a city tax only by ordinance and not by resolution. Similarly, statutes authorizing school boards to assess taxes are strictly construed. Failure to comply with a statute authorizing a levy is generally considered not just an irregularity, but a fatal omission which vitiates the tax.[10]
Prior to the passage of subsection 236.25(2), effective June 30, 1980, school boards could levy the discretionary 2 mills only by resort to obtaining voter approval at a referendum. This statute was designed to make the levy of the 2 mill tax easier for the school boards, but not as easy as the levy of up to 8 mills of tax permitted under subsection 236.25(1). The language used in subsection 236.25(2) relating to the discretionary tax uses “shall,” instead of “will”[11] when it specifies the kind and frequency of notice to be given to the taxpayers. Similarly, subsection 200.065(3) uses “shall” in specifying the unusually large sized advertisement required.
The intent of these provisions is obviously to insure that the School Board’s intent to impose the additional levy is publicized in a LOUD and EYE-CATCHING way. A public throng rather than a public election is intended to take place: Let the elected officials answer directly to the electors. This process was subverted in Marion County in this case, as illustrated by the fact that no one came to the School Board meeting on August 14 when the required notice was published in the wrong place, and in bifocal size.
Defects one through three go to the essence of the statute because they deprived the taxpayers of Marion County of notice of the intended levy and their right to attend the meetings where they could be heard, and the School Board could be called on to explain.
Were only defects four and five involved in this case, we probably would uphold the tax levy, because they were technical and they do not strike at the essence of the process involved in making this extraordinary levy. However, we also think defect six was material. If the School Board only has to say in its notice and in its budgets at its public hearings that it is building up a capital fund for unspecified purposes in the future, the tax-paying public who attends the meetings will have no input because there will be no meaningful dialogue. Although it did not happen in this case, the School Board could play a shell game with the voters, never committing itself to any project, and yet coming up with a different one when one is under attack.
Subsection 236.25(2)(c) also uses the “shall" verb form in stating: “Such notice shall specify the projects or number of school buses anticipated to be funded by such additional taxes.... ” (Emphasis added.) Subsection (2)(a) specifically limits the kinds and types of projects the 2 mill levy may be used for. The inference is clear that the notice and budgets must specify with some certainty the purpose or purposes for which the discretionary tax is needed.[12]
In Street v. Maries County R-I School District of Maries County, 511 S.W.2d 814 *21 (Mo.1974), the court invalidated a referendum vote on a tax levy because it failed to state the purpose of the tax increase. Under Missouri law, the “purpose of the increase” had to be submitted to the voters. The court said:
The voters might be willing to approve a rate increase to provide additional classrooms, but not to construct a gymnasium, and the reason for the requirement that the ‘purpose of the increase’ be submitted to the qualified electors was to give them that choice.
Id. at 816.
Similarly, we conclude the basic intent of subsection 236.25(2) would be subverted and by-passed if the School Board is not required to state in its notice and budgets the specific purposes for which the tax levy is needed.[13] A School Board witness testified at the trial below:
It is much simpler to leave the projects not yet authorized and encumbered by the board in the unreserved balance; and as the superintendent recommends to the Board the next project to do, the Board acts on that and we do a budget amendment from the unreserved fund balance up to the specific project to take care of site purchase, construction, architect fees, equipment and all that.
He admitted the Board could have amended the budget to list the projects. The attorney for appellants then asked:
If you had done that, every single citizen in Marion County would know what their money was going to be spent for when they initially levied the tax, wouldn’t they?
The witness answered: “Right.”
For the reasons stated herein, we reverse the lower court’s judgment, and hold the 2 mill tax levy was illegal and void because the Board failed to act in substantial conformity with the law. Equitable relief would have been appropriate at the time this suit was brought.[14] Under these circumstances the appellant should have sought to expedite this appeal by filing an appropriate motion or by telling the court at oral argument that time was an important factor. The issue of good faith, vel non, was not litigated below, nor were other issues which may be appropriate at this time in determining what relief may now be suitable. We remand this proceeding to the lower court to make these determinations. See Gulesian v. Dade County School Board, 281 So.2d 325 (Fla.1973); Coe v. Broward County, 358 So.2d 214 (Fla. 4th DCA 1978).
REVERSED AND REMANDED.
DAUKSCH and COBB, JJ., concur.

. Florida Rule of Civil Procedure 1.220.

. Section 236.25(2)(a), Florida Statutes (1981), provides:
In addition to the maximum millage levy as provided in subsection (1), each school board may levy up to 2 mills of tax on the nonexempt assessed valuation for the following school purposes:
1. New construction and remodeling projects, as set forth in s. 235.435(3), without regard to the prioritization in that section, sites and site improvement or expansion to new sites, existing sites, auxiliary facilities, or ancillary facilities.
2. Maintenance, renovation, and repair of existing school plants. However, these funds shall not supplant current expenditures from operating revenues for maintenance, renovation, and repair, based on the average of the prior 3 fiscal years; and such funds shall be subject to the provisions of s. 4 of chapter 79-583, Laws of Florida.
3.School bus replacement.

.This suit was apparently filed before the tax assessment had been certified for collection pursuant to section 193.122, Florida Statutes (1981). Therefore, it was obviously within the 60-day jurisdictional time limit provided by subsection 194.171(2), Florida Statutes (1981). Its prematurity is not jurisdictional. Collins Inv. Co. v. Metropolitan Dade County, 164 So.2d 806 (Fla.1964).

. Drafters in Tallahassee must be training under writers of the Internal Revenue Code, for indeed this statute is comlex and confusing.

. § 230.17(2), Fla.Stat. (1981).

. § 236.25, Fla.Stat. (1981).

. Cf. Peters v. Meeks, 163 So.2d 753 (Fla.1964) (meeting held one day too early).

. Schneider v. Gustafson Indus. Inc., 139 So.2d 423 (Fla.1962).

. See also Wells v. Thomas, 89 So.2d 259 (Fla.1956); Montgomery v. Gipson, 69 So.2d 305 (Fla.1954); Kester v. Bostwick, 153 Fla. 437, 15 *20 So.2d 201 (1943); Steward v. Gadarian, 141 So.2d 289 (Fla. 1st DCA 1962).

. § 200.191(6) Fla.Stat. (1981): “Millages shall be fixed only by the resolution of the governing body of the taxing authority in the manner specifically provided by general law or by special act;” 79 C.J.S. Schools & School Districts § 398 (1982).

. Webster’s Grammer: The traditional command form is shall. Webster's New Collegiate Dictionary 1056 (1973 ed.):
Shall: used in laws, regulations, or directives to express what is mandatory; used to express a command or exhortation.

. See People ex rel. Meyers v. Chicago & N.W. Ry. C., 1 Ill.2d 255, 115 N.E.2d 339 (1953); People ex rel. Leaf v. Roth, 389 Ill. 287, 59 N.E.2d 643 (1945); 79 C.J.S. Schools & School Districts § 383 (1982).

. Appellees argue that section 237.131, Florida Statutes (1981), provides that “[N]o irregularities of form or manner in the preparation or adoption of any budget under the provisions of this chapter shall invalidate either the budget adopted or the taxes levied therefor.” (Emphasis added.) However, the 2 mill tax levy involved in this case is not provided for by chapter 237, and it is an extraordinary tax in lieu of a voter referendum.

. See Dep’t. of Admin. v. Horne, 269 So.2d 659 (Fla.1972); Rio Vista Hotel & Improvement Co. v. Belle Mead Dev. Corp., 132 Fla. 88, 182 So. 417 (1937); Fredericks v. Blake, 382 So.2d 368 (Fla. 3d DCA 1980); City of Coral Springs v. Florida Nat’l Properties, Inc., 340 So.2d 1271 (Fla. 4th DCA 1976).